UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| KEVIN AND BONNIE POTTS, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Case No. 1:17-cv-63 SNLJ |
| | ) |
| DARYL COOPER d/b/a SPEED AUTOMOTIVE, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

Plaintiff Kevin Potts was injured when he fell through the roof of defendant's business. Defendant moved for summary judgment. (#35.) After extended briefing and a few contested discovery- and ADR-related motions, the matter is ripe for disposition.

**I.     Factual Background**

The following facts are undisputed unless otherwise indicated. In September 2015, defendant hired non-party Casco Midwest to replace the roof on his commercial property located in Cape Girardeau, Missouri. Plaintiff testified that he was an employee of Casco Midwest and that Casco's owner, Jerry Casper, Sr., was plaintiff's boss. The contract, which plaintiff testified he never saw, indicated that the roof was rotting and needed to be replaced. Plaintiff did testify, however, that before beginning work on the roof, he and another Casco employee surveyed the roof with defendant, who pointed out rotting areas and "soft" spots. Defendant was at his home, not on the premises, when plaintiff fell through the roof. Plaintiff testified that the accident happened as follows:

> The rubber on the roof is on a flat boarded surface. The rubber is glued down to the wood. Naturally you have to put some kind of force on it to pull it up. I was pulling it up with both hands. And I recall my hands slipped off. I made a step back. I slipped off, just kind of falling backwards a little bit. So I put my left foot out. I wasn't falling. I was just stumbling backwards. I put my left foot back. I guess when I put my foot back I went through…the roof.

The parties appear to disagree regarding whether plaintiff fell through rotting roofing material or through a hole he had already created intentionally.

## II. Legal Standard

Pursuant to Federal Rule of Civil Procedure 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467 (1962). The burden is on the moving party. *City of Mt. Pleasant, Iowa v. Assoc. Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir. 1983). The court is required to resolve all conflicts of evidence in

favor of the nonmoving party. *Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976).

**III. Discussion**

Plaintiff's remaining counts are for (1) negligence and (2) loss of consortium on behalf of plaintiff's wife. Because the Court will grant summary judgment to defendant on the negligence count, the plaintiff's loss of consortium count also necessarily fails.

Plaintiff's theory is that the defendant, as the owner of the property on which plaintiff was working when he fell, was responsible for plaintiff's safety. A landowner owes a duty to use reasonable and ordinary care to prevent injury to invitees. *State ex rel. Union Elec. Co. v. Dolan*, 256 S.W.3d 77, 83 (Mo. *banc* 2008); *Restatement (Second) of Torts* § 343 (1965). An employee of an independent contractor performing work contracted for by the landowner is one such invitee. *Dolan*, 256 S.W.3d at 83. An exception to that rule arises, however, when "the landowner relinquishes possession and control of the premises to an independent contractor during a period of construction." *Id.* (quoting *Matteuzzi v. Columbus P'ship, L.P.*, 866 S.W.2d 128, 132 (Mo. banc 1993)). "[T]o establish that the landowner retained possession and control of the premises and the attendant duty of care, the plaintiff must show that the landowner controlled the jobsite and the activities of the contractor." *Id.* (quoting *Matteuzzi*, 866 S.W.2d at 132). Plaintiff faces a high bar:

> the owner's involvement in overseeing construction must be substantial...the control must go beyond securing compliance with the contracts; the owner must be controlling the physical activities of the employees of the independent contractors or the details of the manner in which the work is done.

3

*Matteuzzi*, 866 S.W.2d at 132 (quoting *Halmick v. SBC Corporate Servs., Inc.*, 832 S.W.2d 925, 929 (Mo. Ct. App. 1992) (emphasis in original))

Plaintiff makes several arguments in an attempt to show that defendant controlled the jobsite and Casco's activities. First, plaintiff points out the unfortunate fact that, on the day defendant was served with the complaint, defendant used scissors and a copy machine to revise the contract with Casco to remove plaintiff's name from the letterhead on which the contract was written. Despite this obfuscatory behavior, defendant confessed to his attorney, who advised plaintiff's counsel about the altered document. Plaintiff's attempt to rely on this behavior is undercut by the fact that plaintiff did not even know that his name was on Casco's letterhead; plaintiff testified that although he and Casco's owner had discussed forming a partnership, no such relationship had been solidified, and everyone agrees that plaintiff was Casco's employee. Plaintiff suggests that defendant's behavior shows he tried to "cover up the master-servant nature" of their relationship; in fact, whether or not plaintiff's name was on the bid does not appear to affect defendant's liability at all. Defendant hired Casco to repair the roof, and plaintiff admits he worked for Casco. Plaintiff fell while repairing the roof as Casco's employee. The presence or absence of plaintiff's name on the letterhead is immaterial.

Second, plaintiff contends that defendant was deeply involved in the details of the roof repair. In support, plaintiff points to facts that (1) defendant went onto the rooftop with Casco employees to point out rotting spots and generally explain what needed to be done, (2) defendant purchased materials for the roofing job, (3) defendant asked plaintiff

4

to dispose of debris on the roof unrelated to the roof repair, (4) defendant provided the ladder used to access the roof, and (5) defendant told plaintiff and others where to park. None of these facts, even when taken together, support that defendant "substantially" oversaw the details of the roof replacement. The record shows that defendant accompanied plaintiff and others onto the roof before work was begun to discuss the job, but defendant was at home at the time of the accident and cannot be said to have taken control of the roofing project. Furthermore, although defendant paid for the roofing materials, the materials were ordered by Casco's owner, Jerry Casper.

Plaintiff testified that he thought of defendant as his boss. Defendant did tell plaintiff where to park and told plaintiff not to bother one of the building's tenants. However, these facts (and other facts) are in keeping with defendant's role as the property owner and Casco's client. It does not suffice to show that defendant acted as plaintiff's employer or that he controlled the jobsite or Casco's activities. Furthermore, plaintiff testified several times that Jerry Casper was his boss and that he was Casco's employee.

Next, plaintiff argues that defendant would not let him enter the building, so plaintiff could not inspect the underside of the roof, which would have allowed plaintiff to see the rotting area and avoid falling later. This argument appears to be a red herring, as the written bid from Casco disclosed the rotten decking, and plaintiff himself testified that defendant advised them of the rotten decking before the job started. Furthermore, plaintiff testified that he stumbled backwards into the rotten area after losing his balance

5

while removing the roof nearby. Casco and plaintiff knew they had been hired to remedy the very problem that caused plaintiff's accident.

Finally, plaintiff argues that defendant cannot show that plaintiff himself was an independent contractor. Plaintiff, however, was not an independent contractor: Casco was the contractor, and plaintiff was Casco's employee. There is no reason defendant would have to show plaintiff was an independent contractor.

Plaintiff's remedy for his injury appears to be squarely in the realm of worker's compensation, not in premises liability. Plaintiff's cited cases do not support his claim. In *Brister v. Ikenberry*, 300 S.W.3d 588, 589 (Mo. App. E.D. 2009), for example, the plaintiff was injured while working for a power line company on defendant's property. There, the court of appeals reversed the trial court's grant of summary judgment to defendant because an issue of fact existed regarding whether the power line company was an independent contractor and whether landowner exercised control over the manner of work. Relevant facts included that plaintiff's employer, the power line company, had been the defendant's exclusive contractor for 13 years, and defendant paid the contractor on an hourly basis—not by the job. The power line company and defendant had daily meetings in which defendant gave the contractor instructions and had the power to pull the contractor's employees on and off jobs. The contractor's employees also received training from defendant. The court thus held that the evidence did not support that the power line company was an independent contractor as a matter of law—instead, the evidence pointed to the power line company being defendant's servant. *Id*. at 593-94.

Here, it is undisputed that plaintiff was Casco's employee, and that Casco had bid on a one-time job to repair defendant's roof. Although defendant advised Casco and plaintiff that the roof was rotting in places, and defendant told Casco employees where to park and made other minor requests, no evidence suggests that defendant controlled the roof replacement in any way. Plaintiff and Casco, not defendant, had experience with roof replacement. Casco and plaintiff were executing the job defendant hired them to do, and no evidence shows that defendant controlled either the physical activities of Casco employees or the details of their work.

The plaintiff's motion for extension of time will be denied as moot, as plaintiff received the discovery he sought, and, furthermore, plaintiff filed a "supplemental response" to the summary judgment motion.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment will be GRANTED.

**IT IS FURTHER ORDERED** that plaintiff's motion for extension (#38) is DENIED as moot.

Dated this __13th__ day of February, 2019.

                                        STEPHEN N. LIMBAUGH, JR.
                                        UNITED STATES DISTRICT JUDGE